

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Norfolk Division**

**JEFFREY SCOTT RIDENOUR,**
**Individually and on behalf**
**of all others similarly situated,**

        **Plaintiffs,**

v.

**MULTI-COLOR CORPORATION;**
**4053 Clough Woods Drive**
**Batavia, OH 45103**
**SERVE:**     **Secretary of the Commonwealth**
           **P.O. Box 2452**
           **Richmond, VA  23218-2452**

**and**

**STERLING INFOSYSTEMS, INC.**
**1 State Street, 24th Floor**
**New York, New York 10004**
**SERVE:**     **Secretary of the Commonwealth**
           **P.O. Box 2452**
           **Richmond, VA  23218-2452**

Civil No. ___2:15cv41___

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Comes now the Plaintiff Jeffrey Scott Ridenour, individually and on behalf of all other similarly situated individuals, and for his Class Action Complaint alleges the following claims:

### NATURE OF THE CASE

1.    Plaintiff brings this action against Defendants for violations of the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681b(b)(3), 1681k(a)(1) and 1681e(b).

2.    Founded in 1916, Multi-Color Corporation ("MCC") operates a national and international label-making business with factories within and outside the United States.

3.    MCC employs individuals such as the Plaintiff in North, Central and South America, Europe, Australia, New Zealand and South Africa. MCC employs approximately 2,700 individuals across 29 operations globally and is a public company trading on the NASDAQ Global Select Market Exchange (NASDAQ: LABL). MCC operates a label-printing plant located at 1300 Cavalier Blvd. in Chesapeake, VA.

4.    As part of its hiring process, MCC uses criminal-background reports generated by Sterling to make employment decisions. Because such employment decisions are based in whole or in part on the contents of the criminal-background reports, MCC is obliged to adhere to certain strictures of the FCRA.

5.    Sterling Infosystems Inc. ("Sterling") operates a national database of public records and related employment histories as a nationwide consumer reporting agency ("CRA"). Sterling maintains an FCRA database to prepare and furnish consumer reports for employment and other purposes. Sterling provided these consumer reports to prospective and existing employers, including MCC, regarding members of the putative class. MCC refused to hire and other individuals based in whole or in part on the contents of the consumer report.

6.    When using criminal-background reports for employment purposes, "users" must, before declining employment based in whole or in part on the contents of the report, provide job applicants like Plaintiff with a copy of their respective reports as well as a written summary of their rights under the FCRA.

7.    Providing a copy of the criminal-background report as well as a statement of consumer rights before making a final adverse employment decision arms the nation's millions of job applicants with the knowledge and information needed to challenge inaccurate, incomplete, and misleading public-records-based reports. The FCRA is designed to permit

individuals whose reports are inaccurate with ample time to identify the inaccuracies and correct them before the employer has made an employment decision.

8.     To complete this process—consideration of the background reports and sending of the mandatory FCRA notices, MCC hired Sterling, which operates in this and many instances as both the consumer reporting agency generating the background check as well as the agent of the employer to execute all decisions based on the information contained therein.

9.     Each Defendant is informed of the necessary rigors FCRA compliance imposes, as the facts alleged in this case have been the subject of extensive litigation against Sterling in other cases.

10.     Plaintiff brings nationwide, class claims against Defendants under 15 U.S.C. § 1681b, because they, as an omission in their MCC hiring process failed to provide Plaintiff with a copy of his criminal-background report or a summary of his rights under the FCRA before taking an adverse action against him. Plaintiff also brings a nationwide, class claim under 15 U.S.C. § 1681e(b) against Sterling because Sterling does not obtain the complete criminal or traffic records that it includes in employment-purposed consumer reports that it prepares and disburses about job applicants and employees.   This practice of utilizing and providing incomplete reports is not a reasonable procedure designed to assure maximum possible accuracy concerning the job applicant or employee about whom the report relates.

11.     Plaintiff also brings an individual claim under 15 U.S.C. § 1681e(b) against Sterling because of an inaccuracy contained in his Sterling report. Sterling sold to MCC a report about Plaintiff that "verified" he was convicted of a crime, but which criminal report was illegible and so misleading as to be inaccurate, thus it was impossible to determine the date,

nature, disposition or other information about the so-called crime – which was, in fact, a misdemeanor traffic offense approximately eighteen years prior to the date on the report.

## PARTIES

12.     Plaintiff Jeffrey Scott Ridenour is a "consumer" as defined by 15 U.S.C. § 1681a.

13.     Mr. Ridenour lives in Virginia Beach, Virginia, which is within the territorial confines of the Eastern District of Virginia.

14.     MCC is for-profit corporation conducting business and hiring employees in the Eastern District of Virginia and in the United States.

15.     MCC is also a "person" using "consumer reports" to make "employment decisions" and take "adverse action" against "consumers," as those terms are defined by 15 U.S.C. § 1681a.

16.     Defendant Sterling Infosystems, Inc. is a "consumer reporting agency" that sells, furnishes and uses consumer reports and services in the Commonwealth of Virginia and throughout the United States, including within this District and Division.

## JURISDICTION AND VENUE

17.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

18.     Venue is proper in the Eastern District of Virginia because Defendants are subject to personal jurisdiction in this District, maintain a place of business in this District, and make employment decisions and/or sell consumer reports regarding individuals residing in this District. 28 U.S.C. § 1391(c). Further, Mr. Ridenour is a resident of this District and Division.

## FACTUAL ALLEGATIONS

19.     During the class period, Sterling furnished an employment-purposed consumer report concerning Plaintiff to MCC.

20.     Among other things, the FCRA regulates the collection, maintenance, and disclosure of consumer credit report information by consumer reporting agencies ("CRAs"), including public record information.

21.     Additionally, the FCRA mandates conditions, procedures, and limitations on the use of consumer reports for employment purposes by prospective employers and other individuals.

22.     The FCRA mandates that a report user, before taking any adverse action based in whole or in part on a consumer report, must provide to the consumer a copy of the applicant's report and a summary of the applicant's rights under the FCRA.

23.     MCC uses a disclosure and authorization form provided to it by Sterling, which upon information and belief, such disclosure and authorization form was not the "clear and conspicuous disclosure ... in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" as required by section 1681b(b)(2)(A)(i) of the FCRA.

24.     For instance, upon information and belief, the forms used by Sterling improperly attempted to use the disclosure to get the consumer, among other things, to waive his or her rights and prospectively agree that the employer only acts in non-discriminatory fashion, as well to agree to things not required or provided by law (*e.g.*, under the FCRA, a consumer can dispute at any time; he is not limited to five days). Sterling knows that such liability waivers have been

found by courts as contrary to law, contrary to the FTC guidance, void, unenforceable and violative of the FCRA.[1]

25.     Although MCC - through Sterling's automatic adjudication process - deem an applicant ineligible for hire based in whole or in part on a consumer report, they do not notify the applicant of that fact until after the decision not to hire has been finalized.

26.     Upon information and belief, MCC delegates the determination of an applicant's employability to Sterling, which then applies MCC's hiring criteria to the applicant's consumer report. Sterling also acts to code and adjudicate MCC applicants.

27.     Neither Sterling nor MCC provides pre-adverse action notice to job applicants, together with a copy of the applicant's consumer report and a description of the applicant's rights as required by 15 U.S.C. § 1681b(b)(3).

28.     MCC's violations of the FCRA have been willful, wanton and reckless in that it knew, or should have known, that it was failing to comply with the requirements of the FCRA.

29.     MCC's willful disregard of its duties violates the FCRA as a matter of law, and it exacts serious consequences on job applicants and interstate commerce. The natural result of MCC's failures to abide by the conditions, procedures and limitations of the FCRA prejudices consumers' ability to challenge information contained in consumer reports provided to MCC.

---

[1] *Singleton v. Domino's Pizza, LLC*, 2012 WL 245965, *9 (D. Md. Jan. 25, 2012) ("[B]oth the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document."); *Avila v. NOW Health Group, Inc.*, 2014 WL 3537825, *2-3 (N.D. Ill. July 17, 2014); *Reardon v. Closetmaid Corporation*, 2013 WL 6231606, *10-11 (W.D. Pa. Dec. 2, 2013) (finding disclosure with liability waiver to be "facially contrary to the statute at hand, and all of the administrative guidance"); *See also Massey v. On-Site Manager, Inc.*, 2011 WL 4356380, *3-5 (E.D.N.Y. Sept. 16, 2011) (denied defendant's attempt to enforce waiver as to plaintiff's FCRA claim for willful conduct).

30. Sterling does not provide to consumers a copy of the employment-purposed consumer report containing a criminal record likely to adversely affect employment at the time it provides the report to the employer or otherwise adjudicates the employment eligibility of the consumer according the employer's hiring policies.

## THE EXPERIENCE OF THE REPRESENTATIVE PLAINTIFF

31. Mr. Ridenour has been a press operator for over twenty years. He began working as a temp at MCC in Chesapeake, Virginia as a Press Operator Trainee in November of 2012, through an assignment by Snelling Temporary Services ("Snelling"). Within approximately one month, Mr. Ridenour was offered a full-time permanent position with MCC, which he accepted but which required that he submit to a background check and fill out an application as a condition of employment.

32. On December 11, 2012, and within five years of this filing, MCC requested that Mr. Ridenour complete an employment application and background check consent form. The background check consent form may or may not have complied with the requirements of the FCRA. Mr. Ridenour was told by MCC that the hiring and background check process would be completed within two weeks. Upon information and belief, MCC purchased a background check on Mr. Ridenour from Sterling for an employment purpose.

33. Thereafter, on approximately December 20, 2012, and in accordance with Defendant's standard procedures, Sterling furnished Mr. Ridenour's background report to both MCC and to itself, as MCC's agent and the party responsible for making the actual hiring decision for MCC.

34. Unbeknownst to Mr. Ridenour, MCC and/or Sterling used the consumer report it obtained and/or created to take an adverse-employment action against him. Upon information

and belief, as Sterling is authorized under its contract with MCC, Sterling applied MCC's pre-defined hiring criteria and coded Mr. Ridenour to be ineligible for employment. Sterling did not notify Mr. Ridenour he was not hired, it did not provide Mr. Ridenour with a copy of the report containing the criminal record, and it did not provide Mr. Ridenour with a summary of his rights under the FCRA.

35.     This adjudication and coding constituted an "adverse action" by Sterling and by MCC.

36.     Sterling's decision to code Ridenour as ineligible for hire was based upon a "hit" attributed to Ridenour and furnished in his consumer report. The hit include a criminal conviction public record from Fairfield County, Ohio.

37.     The Results Status contained in the background report regarding the Criminal Service contained a "finding" of a criminal record alert, which the result indicates such record was "verified."  However, in the background report created and transmitted by Sterling contained "Criminal Results" that states "THE CRIMINAL INFORMATION REPORTED IN THIS REPORT APPEARS EXACTLY AS IT IS RECEIVED FROM THE LOCAL JURISDICTIONS AND MAY CONTAIN INFORMATION THAT MAY BE PROHIBITED FOR USE IN MAKING HIRING DECISION. THEREFORE, IT IS ADVISABLE TO CONSULT YOUR CORPORATE COUNSEL PRIOR TO MAKING ANY ADVERSE HIRING DECISIONS."

38.     The image of the record purportedly received from the local jurisdiction was so faint that it was completely illegible.

39.     Prior to taking adverse action against Ridenour, both Sterling and MCC failed to provide him with any pre-adverse action notice required by § 1618b(b)(3)(A).

40.     On or about January 18, 2013, Mr. Ridenour called Lynn Cordova in the Human Resources Department at MCC because had not received any communication at all about his application or the status of the permanent full-time job he had been offered pending the outcome of the background check. He had not received a copy of the background report or any other communication from either MCC or Sterling. Ms. Cordova responded that she had received "no word from corporate office" regarding his application.

41.     On or about January 30, 2013, Mr. Ridenour received a telephone call from Selena Dickerson from the MCC Corporate Headquarters in Scottsburg, IN. At that time, she asked Mr. Ridenour if he had a DUI conviction with jail time, in Ohio in 1995.

42.     Mr. Ridenour confirmed that he had a traffic offense, which was classified as a misdemeanor offense, in 1995. Ms. Dickerson accused Mr. Ridenour of lying on his application when he answered "no" to the question regarding convictions. He explained that he did not lie, but he believed that the question did not relate to traffic offenses, especially a traffic offense eighteen years ago.

43.     On that same day, January 30, 2013, Mr. Ridenour contacted Ms. Cordova to inform her of the conversation he had with Ms. Dickerson and requested copies of "everything he had signed" including his application.

44.     Ms. Cordova refused to provide him with a copy of anything he had signed, including the application or authorization for background check, if any existed. Ms. Cordova informed Mr. Ridenour that it was illegal for her to provide him with the report and that she would not release any information to him until she obtained authorization from "corporate" and that she didn't think "corporate" would release the application "because it is company property."

9

45.     Ms. Cordova informed Mr. Ridenour that she would request copies of the application and "everything that he had signed." At this time, neither MCC nor Sterling had provided Mr. Ridenour with a copy of his background report or a copy of the FCRA summary of rights.

46.     Mr. Ridenour requested that Ms. Cordova inform Mr. Joe Mummert of the status of his application.

47.     As of January 30, 2013, Mr. Ridenour was still working the third shift at MCC as a press operator temp.

48.     On February 5, 2013, Mr. Mummert informed Mr. Ridenour that MCC would not hire him because the information contained in his background report showed that he "lied" on his application that he did not have a criminal conviction. On that date, Mr. Ridenour still had not been provided a copy of the background report that Sterling and MCC had used to make the adverse employment decision, nor had he been provided with his lawful summary of FCRA rights.

49.     On or about February 8, 2013, Mr. Ridenour received a telephone call from Ms. Dickerson to ask what copies of documents he was seeking. Mr. Ridenour informed her that he wanted a copy of the background check report, consent for background check report, application, and anything that he had signed.

50.     On or about February 15, 2013, Mr. Ridenour received a copy of the background report created by Sterling and provided to MCC and Sterling on December 20, 2012. Most of page 3, which supposedly contained the actual public record, was not legible.

51.     On February 19, 2013, Mr. Ridenour called both the Human Resources departments at MCC's Chesapeake, VA and Scottsburg, IN locations to request a legible copy of page 3 of the report, his application, authorization, and any other document that he had signed.

52.     On February 19, 2013, Mr. Mummert informed Mr. Ridenour that he would allow him to continue as a temp through Snelling until he found other work.

53.     On February 21, 2013, Mr. Ridenour had still not received a legible copy of the criminal record portion of the background report, a copy of the application, authorization, FCRA summary of rights, or any other document he had signed.  He again contacted both the Human Resources departments at MCC's Chesapeake, VA and Scottsburg, IN locations to request a legible copy of page 3 of the report, his application, authorization, and any other document that he had signed.

54.     On February 26, 2013, Mr. Ridenour still had not received the documents he requested, and so he left a message at both the Human Resources departments at MCC's Chesapeake, VA and Scottsburg, IN locations to request a legible copy of page 3 of the report, his application, authorization, and any other document that he had signed.

55.     On or about March 11, 2013, Mr. Ridenour received a very faint, but legible copy of page 3 of the background report, a copy of the consent form (page 3 of 5), and a summary of FCRA rights (4 & 5 of 5).   The faint, but legible copy of page 3 of the background report is difficult to read, incomplete and is misleading so as to be inaccurate because it does not contain complete information. For instance, it does not indicate that the offense was considered by the originating jurisdiction to be a traffic offense.

56. Upon information and belief, Mr. Ridenour's record is not the actual, complete and up-to-date public record because Sterling does not and cannot obtain the complete public record.

57. Upon information and belief, Sterling did not obtain complete public records of the individuals about whom it prepared employment-purposed consumer reports, therefore it could not have maintained strict procedures designed to insure that the public record was complete and up-to-date under 15 U.S.C. § 1681k(a)(2).

58. Therefore, Sterling was required to comply with the notice provisions of 15 U.S.C. § 1681k(a)(1).

59. Sterling did not provide notice to Mr. Ridenour that it was supplying MCC with his consumer report, which contained a public record likely to have an adverse effect upon his employment.

60. Sterling did not communicate with Mr. Ridenour or any person about whom it had supplied a consumer report to a user that contained a public record with negative information such as a criminal conviction, which is likely to have an adverse effect on employment.

61. If it weren't for Mr. Ridenour's persistence, MCC would not have provided him with any of the required information concerning his FCRA rights or his background report.

62. Despite the fact that Sterling did not obtain, and never obtains, a complete public record, Neither MCC nor Sterling provided Mr. Ridenour with a pre-adverse action notice at least five days before taking adverse action. Upon information and belief, Mr. Ridenour and other consumers like him did not have a reasonable means to learn of this process unless they, like Mr. Ridenour, repeatedly requested such information from MCC.

## CLASS ACTION ALLEGATIONS

PLAINTIFF'S PROPOSED CLASSES

63.     Plaintiff brings this action on a class basis, with initial class definitions that follow.

64.     *The § 1681b(b)(3) Class, February 15, 2010, through the present.* Mr. Ridenour brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following Class initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a.) who were employees of MCC or who applied for an employment position with MCC (b.) as part of this application process were the subject of a consumer report used by MCC and/or Sterling on or after February 15, 2010 and through the pendency of this action (c.) where that consumer report contained an item that would disqualify the person from such position under MCC's hiring policies, (d.) which consumer was not then approved or hired for the position, (e.) and to whom Defendant MCC did not provide a copy of the consumer report and other disclosures required by 15 U.S.C. §1681 b(b)(3)(A)(i)&(ii) at least five business days before the date the employment decision was adjudicated.

65.     *The § 1681b(b)(2), February 15, 2010, through the present.* Mr. Ridenour brings this class action pursuant to Rules 23(a) and 23(b) of the Federal Rules of Civil Procedures, on behalf of the following Class initially defined below:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States), (a.) who were employees of MCC or who applied for an employment position with MCC (b.) as part of this application process (c.) the Defendant procured or caused to be procured a consumer report for employment purposes (d.) using a written disclosure provided to it by Sterling (e.) which was not the "clear and conspicuous disclosure ... in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes" in violation of the Fair Credit Reporting Act disclosure and authorization requirements at 15 U.S.C. §1681 b(b)(2).

66. ***The § 1681k(a)(1) Class, February 15, 2010, through the present.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681k, Plaintiff brings this action for himself and on behalf of a class ("the §1681k Class") defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a consumer report issued after February 15, 2010, (b.) that was furnished by Sterling for an employment purpose, (c.) that contained at least one record of a criminal or traffic conviction or arrest and (d.) to whom Sterling did not place in the United States mail postage pre-paid, on the day it furnished the report, a written notice that it was furnishing the subject report and containing the name of the person that was to receive the report.

67. ***The § 1681e(b) Class, February 15, 2010, through the present.*** Pursuant to Federal Rule of Civil Procedure 23 and 15 U.S.C. § 1681e(b), Plaintiff brings this action for himself and on behalf of a class ("the §1681e(b) Class") defined as:

> All natural persons residing in the United States (including all territories and other political subdivisions of the United States) (a.) who were the subject of a consumer report issued after February 15, 2010, (b.) that was furnished by Sterling for an employment purpose, (c.) that contained at least one record of a criminal or traffic conviction or arrest (d.) for which Sterling did not obtain the complete record from the court, thus (e.) did not follow a reasonable procedure to assure maximum possible accuracy of information concerning the individuals about whom such reports relate pursuant to 15 U.S.C. § 1681e(b).

68. Upon information and belief, the putative Classes exceed 100 members each. Information concerning the exact size of the putative Class is within the exclusive possession of Defendants or their agents.

69. The Class members are so numerous that joinder of all members is impracticable.

70. Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

71.     Plaintiff will fairly and adequately protect the interest of the Class members and have retained counsel competent and experienced in complex litigation. Plaintiff is a member of the Classes and do not have any interests antagonistic to or in conflict with the members of the Classes. Plaintiff's claims are the same as those of the Class, which all arise from the same operative facts and are based upon the same legal theories.

72.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including:

   a.  Whether the uniform failure to provide timely a copy of employment purposed consumer reports containing a negative public record violated the FCRA;

   b.  Whether the timing of Defendant's notice to consumers that employment may be declined or terminated based in whole or in part on information contained in a consumer report satisfies the timing requirements at 15 U.S.C. § 1681b(b)(3);

   c.  Whether the adjudication of the Plaintiff's applications constituted an "adverse action";

   d.  Whether the disclosure and authorization form containing, among other things, a liability waiver was a violation of the FCRA's disclosure requirement;

   e.  Whether a Defendant maintains strict procedures designed to insure complete and up-to-date reports when it never obtains a complete and up-to-date court record, therefore § 1681k(a)(2) is inapplicable;

   f.  Whether Defendant's violations of the FCRA were "willful."

73.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Classes is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

74.     Further, the prosecution of several actions by individual members of the Classes would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Classes.  Additionally, individual actions by members of the Classes may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

### COUNT ONE – CLASS CLAIM AGAINST MCC AND STERLING
**Failure to Provide Pre-Adverse Action Notice – Copy of Report**
**15 U.S.C. § 1681b(b)(3)(A)(i)**

75.     Plaintiffs reallege and incorporate by reference all preceding allegations of law and fact.

76.     Defendants each willfully violated 15 U.S.C. §§ 1681b(b)(3)(A)(i) by failing to provide a copy of the consumer report used to make an employment decision to the Plaintiff and the Class members before taking adverse action that was based in whole or in part on that report.

77.     Plaintiffs and the Class members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

78.     Plaintiffs and the Class members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2) and equitable and/or injunctive relief.

79.     In the alternative to the allegations that these violations were willful, Plaintiffs and the Class members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. §1681o and Fed. R. Civ. P. 23(c)(4).

80.     Plaintiffs' counsel seeks attorneys' fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

## COUNT TWO– CLASS CLAIM AGAINST MCC AND STERLING
### Failure to Provide Pre-Adverse Action Notice – Summary of Rights
### 15 U.S.C. § 1681b(b)(3)(A)(ii)

81.    Plaintiff realleges and incorporates by reference all preceding allegations of law and fact.

82.    Defendants each willfully violated 15 U.S.C. § 1681b(b)(3)(A)(ii) by failing to provide a copy of the Summary of Rights required by the FCRA to the Plaintiff and the Class members before taking adverse action that was based in whole or in part on a consumer report.

83.    Plaintiff and the Class members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A) and equitable and/or injunctive relief.

84.    Plaintiff and the Class members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

85.    In the alternative to the allegations that these violations were willful, Plaintiff and the Class members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

86.    Plaintiffs counsel seek attorneys fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

## COUNT THREE - CLASS CLAIM AGAINST STERLING
### 15 U.S.C. § 1681k(a)(1)

87.    Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

88.     The consumer report of the named Plaintiff and of each member of the §1681k class were furnished for an employment purpose and contained one or more public records of the type that may effect an employer's hiring decision.

89.     As to the named Plaintiff and the §1681k class, Sterling uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on its compliance with § 1681k(a)(1).

90.     On information and belief, the Plaintiff alleges that Sterling obtains public records including criminal records, civil liens, civil judgments and civil bankruptcy information from a third party consumer reporting agency and does not attempt to obtain this information through its own courthouse searches or vendors.

91.     On information and belief, the Plaintiff alleges that as to the § 1681k Notice Class, Sterling did not send such class members a notice pursuant to 15 U.S.C. § 1681k(a)(1).

92.     On information and belief, the Plaintiff alleges that as to the § 1681k Notice Class, Sterling did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnishes and resells these records in one of its reports.

93.     Sterling's failure to timely provide the required FCRA notices to the Plaintiff and other members of the putative class violated 15 U.S.C. § 1681k(a)(1).

94.     The conduct, action, and inaction of Sterling were willful, rendering it liable for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

95.     Plaintiff and other members of the putative Class are entitled to recover costs and attorneys' fees as well as appropriate equitable relief from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

### COUNT FOUR – CLASS CLAIM – MCC
### 15 U.S.C. § 1681b(b)(2)

96.     Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

97.     Defendant MCC violated 15 U.S.C. § 1681b(b)(2) by procuring or causing to be procured consumer reports for employment purposes without providing a clear and conspicuous disclosure in a document that consists solely of the disclosure that a consumer report may be obtained for employment purposes.

98.     Plaintiff and the Class members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A) and equitable and/or injunctive relief.

99.     Plaintiff and the Class members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

100.    In the alternative to the allegations that these violations were willful, Plaintiff and the Class members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

101.    Plaintiffs counsel seek attorneys fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

### COUNT FIVE – CLASS CLAIM – STERLING
### 15 U.S.C. § 1681e(b)

102.   Plaintiff incorporates by reference those paragraphs set out above as though fully set forth herein.

103.   Defendant Sterling violated 15 U.S.C. § 1681e(b) failing to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding the Class because it furnished reports about consumers containing criminal or traffic offenses and convictions without first obtaining the court record while informing the employer that the "CRIMINAL INFORMATION REPORTED IN THIS REPORT APPEARS EXACTLY AS IT IS RECEIVED FROM THE LOCAL JURISDICTIONS."

104.   Plaintiff and the Class members seek statutory damages for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A) and equitable and/or injunctive relief.

105.   Plaintiff and the Class members also seek punitive damages for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

106.   In the alternative to the allegations that these violations were willful, Plaintiff and the Class members allege that the violations were negligent and seek issue certification of that issue and an appropriate remedy, if any, pursuant to 15 U.S.C. § 1681o and Fed. R. Civ. P. 23(c)(4).

107.   Plaintiffs counsel seek attorneys fees and costs pursuant to Fed. R. Civ. P. 23(b) and 15 U.S.C. §§ 1681o and 1681n.

**COUNT SIX - INDIVIDUAL CLAIM - STERLING**
**15 U.S.C. § 1681e(b)**

108.   Plaintiff reiterates each of the allegations in the preceding paragraphs as if set forth at length herein.

109.    Defendant Sterling violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports they furnished regarding the Plaintiff.

110.    Specifically, Sterling prepared and furnished a report to MCC that purported to contain criminal information exactly as it was received from the originating jurisdiction. Sterling's representation is so misleading as to be inaccurate.

111.    Furthermore, it only obtained a summary from the jurisdiction, which did not contain the actual record.  Such record was incomplete and misleading because it did not show that the record was for a traffic offense.

112.    As a result of this conduct by Sterling, the Plaintiff suffered actual damages, including without limitation, by example only and as described herein on his behalf by counsel: loss of employment, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

113.    Defendants' violations of 15 U.S.C. § 1681e(b) were reckless, rendering Sterling liable pursuant to 15 U.S.C. § 1681n.  In the alternative, Sterling was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

114.    Plaintiff is entitled to recover actual damages and/or statutory damages, punitive damages, costs and attorney's fees from Sterling in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**WHEREFORE,** Plaintiff and the putative classes respectfully pray for the following relief:

    A.  An order certifying the proposed classes herein pursuant to FED. R. CIV. P. 23 and appointing the undersigned counsel to represent same;

B. The creation of a common fund available to provide notice of and remedy Defendants' unlawful conduct;

C. That judgment be entered for Plaintiff individually for actual and/or statutory damages and punitive damages against Sterling for its violation of 15 U.S.C. §1681e(b), pursuant to 15 U.S.C. §§1681n and 1681o;

D. Statutory and punitive damages for all class claims;

E. Equitable and/or injunctive relief;

F. Attorney fees, expenses and costs; and

G. Pre-judgment and post-judgment interest as provided by law.

**TRIAL BY JURY IS DEMANDED**

Respectfully submitted,

**JEFFREY SCOTT RIDENOUR,** *individually and on behalf of and all others similarly situated*

By: _Susan M. Rotkis_
Susan M. Rotkis, VSB No. 40693
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard
Suite 1-A
Newport News, Virginia  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
E-mail: srotkis@clalegal.com

Leonard A. Bennett, VSB No. 37523
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard
Suite 1-A
Newport News, Virginia  23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662
Email: lenbennett@clalegal.com

James A. Francis
David A. Searles

**FRANCIS & MAILMAN, P.C.**
100 S. Broad Street, 19th Floor
Philadelphia, PA 19110
(215) 735-8600
Email: DSearles@consumerlawfirm.com
Email: jfrancis@consumerlawfirm.com

*Attorneys for the Plaintiff*